**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 1608023713 |
| | ) | |
| | ) | |
| KEENAN DAVIS, | ) | |
| | ) | |
| Defendant | ) | |

Submitted: February 8, 2017
Decided: February 17, 2017

Erik Towne, Esquire
Deputy Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Raymond Radulski, Esquire
Office of the Public Defender
900 N. King Street, 2nd Floor
Wilmington, DE 19801
*Attorney for Defendant*

## DECISION AFTER TRIAL

By Information dated September 13, 2016, the State of Delaware brought an action against Keenan Davis (hereinafter the "Defendant"), which charges him with Driving Under the Influence and Failure to Remain Within a Single Lane. On February 8, 2016, a DUI trial was convened on the matter. At the conclusion of the trial, the Court reserved decision. This is the Court's final decision after trial.

## LEGAL STANDARD

After a verbal colloquy with the Court, the Defendant elected to waive his right to a jury trial, and the case was tried as a bench trial. As such, the Court sat as the sole trier of fact. Therefore, it is the Court's responsibility to assess the credibility of the testifying witnesses and,

where there is a conflict in the testimony, to reconcile these conflicts, "if reasonably possible[,] so as to make one harmonious story."[1] In doing so, the Court takes into consideration the demeanor of the witnesses, their apparent fairness in giving their testimony, their opportunities to hear and know the facts about which they testified, and any bias or interest that they may have concerning the nature of the case.[2] Based upon the facts established at trial, the Court must then determine whether the State has met each and every element of the specified offenses beyond a reasonable doubt.[3]

## FACTS

On August 29, 2016, at approximately 8:40 p.m., Corporal Andrew Pietlock of the Delaware State Police Troop 1 ("Corporal Pietlock") was on uniformed patrol when he arrived at the scene of an accident on northbound I-495. Multiple vehicles had been involved in collisions, blocking the flow of traffic, with a Budget rental box truck (the "Truck") in front of the other vehicles, resting against the left side concrete barrier. Initially, Corporal Pietlock had devoted his attention to the drivers of the vehicles behind the Truck, as another Delaware State Police officer – Trooper Marcione – was speaking with the driver of the Truck. However, after hearing the driver become argumentative, Corporal Pietlock approached to lend assistance.

Upon approaching the Truck, Corporal Pietlock identified Defendant as the driver. Immediately after the accident, Defendant had been found inside the Truck with his seatbelt on. He was the sole occupant.[4] Defendant was subsequently asked to exit the Truck and to provide documentation, to which Defendant responded by handing Trooper Marcione several credit

---

[1] *Nat'l Grange Mut. Ins. Co. v. Nelson F. Davis, Jr.*, 2000 WL 33275030, at *4 (Del. Com. Pl. Feb. 9, 2000).
[2] *State v. Westfall*, 2008 WL 2855030, at *3 (Del. Com. Pl. Apr. 22, 2008).
[3] *See State v. Bell*, 2015 WL 1880591, at *6 (Del. Com. Pl. Apr. 23, 2015).
[4] The State and defense stipulated to the fact that Defendant was alone and belted in when initially approached. The stipulation was to avoid the necessity of Trooper Marcione appearing to testify. The parties agreed this would be the extent of his testimony, along with recounting the fact that Defendant provided credit cards instead of his license.

cards. At this point Defendant became loud, uncooperative, and argumentative, prompting Corporal Pietlock's approach. While standing next to Defendant, Corporate Pietlock noticed an odor of alcohol, glassy, bloodshot eyes, and balance issues.[5] Defendant was unable to stand still; he was swaying and staggering throughout the entire encounter.

At this point, Corporal Pietlock detained Defendant and led Defendant to Corporal Pietlock's patrol vehicle. Once inside, Defendant began complaining of chest pains, causing Corporal Pietlock to summon an ambulance; Defendant was ultimately removed from the scene in the ambulance and taken to the emergency room. After Defendant had left, Corporal Pietlock performed an investigation of the accident scene. The Truck, which was found resting against a concrete barrier, had front-end damage, consistent with contacting concrete barriers on both front sides of the Truck. Corporal Pietlock also found an open, cold beer bottle on the ground outside the passenger side of the Truck. Corporal Pietlock considered the fact the beer was cold to be significant, given the incident occurred in August.

Once Corporal Pietlock was able to leave the scene of the accident, he responded to Troop 1 and secured a search warrant to draw blood from Defendant. Corporal Pietlock went to the emergency room, where he found Defendant on a stretcher and wearing a neck collar. When asked about the accident, Defendant claimed he was driving in either the center or the left lane when an unknown vehicle cut him off, causing Defendant to swerve, lose control of the Truck, and ultimately crash into the concrete barrier. Defendant could not provide any details of this

---

[5] This information was elicited by the following question: "Can you describe the Defendant's appearance?" As will be discussed *infra*, much has been made about what Corporal Pietlock testified he saw – or, more precisely, what he did *not* testify he saw or did not see.

second vehicle whatsoever.[6] Defendant also advised Corporal Pietlock he had consumed one beer earlier and the one in the Truck.[7]

Corporal Pietlock provided the search warrant to hospital staff. However, the staff refused to draw blood without Defendant's written consent. Defendant had initially refused to consent, but then signed the consent form. Despite having received consent at approximately 12:30 a.m., the hospital still had not drawn the blood after approximately five hours had passed from the time of the accident. Corporal Pietlock abandoned his attempt to secure a blood draw. No further testing of any sort was attempted. Corporal Pietlock agreed the inability to secure the blood sample was not Defendant's fault.

## DISCUSSION

To find a defendant guilty of driving under the influence pursuant to 21 Del. C. § 4177(a), the State must prove, beyond a reasonable doubt, that "the defendant was in control or driving a vehicle while also under the influence of alcohol."[8] It is well established that a defendant may be found guilty of driving under the influence even in the absence of chemical testing or field sobriety tests.[9] An impairment theory of guilt rests upon "circumstantial evidence of alcohol's influence on a defendant's conduct, demeanor, and statements."[10] "The evidence must show that the person has consumed a sufficient amount of alcohol to cause the driver to be less able to exercise the judgment and control that a reasonably careful person in full possession of his or her faculties would exercise under like circumstances."[11]

---

[6] While the Court will not consider any hearsay statements from reported witnesses to the accident, the Court does note Defendant did not attempt to provide – or even suggest the existence of – any corroboration.

[7] Although the bottle was found outside of the Truck, the Court takes this to mean Defendant admitted to drinking a second beer inside of the Truck, regardless of how the bottle came to be outside the Truck following the accident.

[8] *State v. Degregoriis*, 2014 WL 3805799, at *1 (Del. Com. Pl. Aug. 1, 2014).

[9] *See Bell, supra*, at *6.

[10] *Id.*

[11] *Degregoriis, supra*, at *1 (quoting *State v. Mealy*, 2010 WL 175623 (Del. Com. Pl. Jan. 20, 2010).

4

In *State v. Degregoriis*, this Court found proof of impairment beyond a reasonable doubt existed with evidence of a "near-miss accident; bloodshot eyes; strong odor of alcohol; and an admission to drinking two (2) to three (3) shots of vodka approximately 20 minutes prior to police contact."[12] In *State v. Lane*, this Court found proof beyond a reasonable doubt with evidence the defendant "(i) consumed alcohol prior to driving the vehicle; (ii) portrayed physical signs of intoxication, including bloodshot glassy eyes, dilated pupils, trouble maintaining balance, and an odor of alcohol; (iii) did not satisfactorily perform the field sobriety tests administered, and; (iv) made statements affirming her intoxication."[13] Conversely, in *State v. Bell*, this Court found insufficient evidence when the record reflected the defendant was unresponsive while stopped at a traffic light, drove away from the officer, failed to immediately stop in response to emergency lights, drove onto a curb while coming to a stop, had slurred speech, and made slow and deliberate movements.[14]

Turning to the matter *sub judice*, the Court heard the following evidence suggesting impairment: a significant single-vehicle traffic accident,[15] difficulty producing documents, a loud and argumentative attitude, an odor of alcohol, bloodshot and glassy eyes, significant balance issues, an admission to drinking, and the presence of a cold, open beer bottle in close proximity to the Truck. During closing arguments, Defendant suggested the difficulty producing documents, the bloodshot and glassy eyes, and the balance issues could be the result of injuries sustained during the accident. Specifically, Defendant argues Corporal Pietlock never testified

---

[12] *Id.* at *2.

[13] *State v. Lane*, 2014 WL 2496327, at *3 (Del. Com. Pl. May 30, 2014).

[14] *Bell, supra,* at *6.

[15] While other vehicles were ultimately involved in accidents as a result of Defendant's accident, no other vehicles collided with the Truck. Furthermore, the Court does not find Defendant's reported explanation credible with respect to the cause of the accident.

whether Defendant suffered any head injuries, creating reasonable doubt as to the cause of Defendant's aforementioned failures.

As noted *supra*, the State asked the following question of Corporal Pietlock: "Can you describe the Defendant's appearance?" Corporal Pietlock responded with a description of Defendant's eyes, the odor of alcohol, and Defendant's lack of balance. While Defendant focuses on Corporal Pietlock's lack of commentary on any injuries, or absence of injuries, it is unreasonable to assume that a trained police officer with approximately sixteen years of experience would fail to note the presence of visible injuries.[16] Furthermore, Corporal Pietlock testified he immediately called an ambulance once Defendant complained of chest pains, suggesting Corporal Pietlock would have called an ambulance sooner if he had observed any signs of injury. Given the absence of any supporting evidence, the Court will not assume the existence of significant injuries.

Based upon the evidence established at trial, the Court finds the State has met its burden of proving Defendant was driving under the influence. Defendant was initially found in the Truck with his seatbelt on, thereby establishing Defendant as the driver of the Truck. Defendant was involved in a significant single-vehicle accident, had difficulty producing documents, was loud and argumentative, had significant balance issues, an odor of alcohol, bloodshot and glassy eyes, admitted to drinking, and a beer bottle was recovered from the scene. These facts are sufficient to prove impairment beyond a reasonable doubt.

Turning to the remaining charge, that of Failure to Remain Within a Single Lane, 21 *Del. C.* § 4122(1) provides "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such

---

[16] "It is the function of the jury, as the trier of fact, to apply reason and common sense, from all of the evidence and the inferences to be drawn from that evidence, to reconcile the inconsistencies that are apparent from the [evidence]." *Landry v. Mabey Bridge & Shore, Inc.*, 2012 WL 5944388, at *3 (Del. Super. Nov, 26, 2012).

6

movement can be made with safety." At trial, the State did not provide any witnesses to the accident. However, Corporal Pietlock testified he observed damage to the front end of the Truck, on both sides, and that the Truck ultimately came to rest against a concrete barrier. Furthermore, Defendant's accident was responsible for multiple subsequent collisions between other vehicles behind the Truck. Remarkably, the Truck was not involved in any contact with any other vehicle. Thus the left front and right front damage must have resulted from making contact with the concrete barriers on each side of the road. The only way this could have occurred is if Defendant left his lane of travel. As noted previously, the Court – as trier of fact – is entitled to apply its common sense to the evidence produced at trial. It strains credulity to suggest a significant accident, resulting in front end damage to both sides of a vehicle, occurred without the Truck imprudently crossing a single lane.[17] Accordingly, the Court finds the State has proven beyond a reasonable doubt that Defendant failed to remain within a single lane.

## CONCLUSION

For the foregoing reasons, the Court finds the Defendant **GUILTY** of Driving Under the Influence and **GUILTY** of Failure to Remain Within a Single Lane. The matter will be scheduled for sentencing before this Judicial Officer.

The Honorable Carl C. Danberg
Judge

cc:    Diane Healy, Judicial Case Management Supervisor

---

[17] The Court also notes this accident did not occur in a stretch of road with only a single lane surrounded by barriers. This was the I-495, with three lanes of traffic and shoulders on either side of the roadway. It is impossible for a vehicle to sustain damage to both sides without contacting any other vehicle, rotating in its direction of travel, or striking opposing sides of the roadway. As there is no indication the former two circumstances occurred, the Court finds the third option fits well into the facts established at trial.